(109 App. Div. 481)

## DE KREMEN v. CLOTHIER.

(Supreme Court, Appellate Division, First Department. December 8, 1905.)

1. WITNESSES—EXAMINATION—LEADING QUESTIONS.

In an action by a real estate broker for commissions, plaintiff was notified to produce a letter which he had received from defendant relative to the amount of commissions and failed to do so. Defendant was asked as to the contents of the letter, and gave all of its substance he could recollect. *Held*, that his counsel should have been allowed by leading questions to ask him if certain matters were referred to therein.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, § 846.]

2. TRIAL—INSTRUCTIONS—WITHDRAWAL OF ISSUE FROM JURY.

In an action by a real estate broker for commissions, a statement by the judge, in submitting the question whether commissions were to be paid until the title passed, that he would be surprised to have the jury bring in a verdict on that point, in view of an admission that a part of the amount claimed was due, and a further statement, in response to an objection, that he could hardly leave that question to the jury, amounted to a withdrawal of the issue from the jury.

3. BROKERS—ACTION FOR COMMISSION—QUESTION FOR JURY.

In an action by a real estate broker for commissions, evidence *held* to require submission to the jury of the question whether commissions were to be paid before title passed.

4. BROKERS—CONTRACT OF EMPLOYMENT—MODIFICATION.

An owner of land wrote to a real estate broker, offering to pay a commission of 5 per cent. if the broker could dispose of the land at a satisfactory price. Nearly two years later the broker wrote, asking if the owner was still willing to offer the property on the same terms. The owner replied that he did not recall the terms and price formerly stated, but would sell the property at a certain price, and would try to make the terms satisfactory to the buyer. *Held*, that the latter letter superseded the former one.

Appeal from Trial Term, New York County.

Action by Dio De Kremen against Isaac H. Clothier. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and HOUGHTON, JJ.

F. K. Pendleton, for appellant.
Stillman F. Kneeland, for respondent.

INGRAHAM, J. The plaintiff was a real estate broker, and brought this action to recover commissions, alleging a special agree-

ment by which the plaintiff was entitled to a commission of 5 per cent. on the purchase price of certain real estate situated in the county of Nassau, in the state of New York. The complaint alleges an agreement in writing—

"Whereby the said defendant undertook and agreed to pay to this plaintiff a commission of 5 per cent. of the purchase price of certain real estate situated in the county of Nassau, in the state of New York, then owned by the said defendant, provided the plaintiff should influence or procure the purchase thereof by any parties at a price acceptable to the defendant."

There is no allegation in the complaint as to the value of the services rendered by the plaintiff; nor was there any evidence to justify a recovery on a quantum meruit. The plaintiff's right to recover must therefore stand or fall upon his proving this special contract alleged. The plaintiff based his proof of this contract upon a letter which he received from the defendant, dated August 6, 1902, and which was as follows:

"Dear Sir: I am in receipt of your letter of the 3d of July, and I return the two notes herewith. I do not know that I quite understand your letter. I am entirely willing to pay a commission of 5 per cent. if you sell the two farms at a price I would be willing to accept, but I would not give any one the exclusive agency. Neither would I sell the Dun farm alone, but both together. * * * But if you should have a responsible cash offer to submit for the whole, say 575 acres, I would give you prompt reply. As I wrote you before, however, the negotiations must be conducted with me personally by letter."

The plaintiff further proved a contract made by the defendant to sell and convey certain premises in Nassau county, aggregating 567 acres, for $45,000. It is not disputed that the plaintiff procured this purchaser, introducing him to the defendant in the month of February, 1904. After the contract for the sale of the property was made, the defendant paid to the plaintiff the sum of $812.50 on account of his commissions earned, leaving the amount due from the defendant to the plaintiff of $312.50, based upon an agreement alleged in the answer that the plaintiff should accept a commission of 2½ per cent. on the purchase price, which, according to the defendant's admission, was still due and unpaid. The plaintiff testified to the receipt of this letter of August 6, 1902, from the defendant; that after its receipt he attempted to get purchasers of the property under the terms therein stated; that he advertised the property, interviewed parties who were likely to buy such properties, took parties to visit the same, and did everything that he could to dispose of it for a period of nearly two years; and finally in the month of February, 1904, he introduced to the defendant a party who made a contract for the sale of the property. Upon cross-examination of the plaintiff the defendant introduced in evidence a letter from the plaintiff, dated February 17, 1904, in which the plaintiff says:

"Since the close of our correspondence in 1902 I have tried to sell your property several times, but owing to some unexplainable cause, when the negotiations came almost to a successful issue, they were suddenly broken off. This occurred so often that I almost despaired of selling your place; but having recently met a gentleman who is looking for such a place, and who seems to mean business, I determined to give it another trial, and in the event of success

reimburse myself for the time and work expended on it two years ago. Please inform me if it is now purchasable, and if you wish me to offer it on the same terms, and oblige."

And the defendant's answer to this letter, which was as follows:

"I do not recall what the price and terms were which you received from me at the time you speak of, but I will say that I will sell both farms (about 575 acres in all) for $50,000, although worth much more. * * * As regards the terms, I would try to make them satisfactory to a buyer, and shall be glad to have you report progress."

The plaintiff having rested, the defendant testified that when he wrote the letter of August 6, 1902, offering to pay a commission of 5 per cent., it was written in view of the fact that he was then holding the property at something more than $100,000; that he heard nothing more from the plaintiff until after the 17th of February, 1904, when he received the plaintiff's letter of that date and answered it on February 19, 1904; that subsequently he received a telegram from the plaintiff, just before the date of the contract, asking whether the defendant would accept $45,000 for the property; that he subsequently had an interview with the plaintiff and the proposed purchaser at the office of his attorney in New York on March 6th, the date of the contract, when the contract was signed; that the defendant had not seen the plaintiff between the time of writing the letter in March, 1902, until this interview with him at the office of his attorney in New York; that on that day the defendant told the plaintiff that he would accept $45,000 cash for the place, the offer that he had then made, but would not pay more than 2½ per cent. commission, nor would he pay any commission until title was taken and settlement was made; and that subsequent to that conversation the contract to sell the property for $45,000 was executed. The defendant then introduced a letter from the plaintiff, dated March 9, 1904, which is as follows:

"Dear Sir: Yours of the 7th inst. rec'd. While it is customary here to pay agents commission when the contract is signed and the first payment made, rather than have any dispute about it, I will accept the payment on account you offer, feeling confident that the title will be taken long before the limit is reached."

The defendant then called upon the plaintiff to produce the letter of the 7th of March, having served a notice to produce it upon the plaintiff. It was not produced, and the defendant was asked as to its contents. He stated that the substance was (not being able to remember the exact language):

"That I never paid commissions until settlement was made and title taken, and that I would not do it in his case."

He was asked to refresh his recollection, but said he could not remember, other than that he had already stated. Counsel for the defendant then commenced a question as follows: "Q. Did you in that letter say anything in regard—" when the court interrupted, "I will not allow you to lead," whereupon counsel for the defendant said, "I am only going to call his attention," when the court said, "I will not allow you to call his attention here." Counsel for the defendant said:

"I take it that the rule is, in asking a witness in a matter of this kind, after exhausting his general recollection, that it is admissible. The Court: I am not going to listen to any argument on the subject. It is too dangerous, when the letter does not exist."

I think this was error. While it is quite true that the extent to which counsel may lead a witness is generally in the discretion of the court, this is not such a case. Counsel was endeavoring to prove the contents of a letter which had been sent by the defendant to the plaintiff and which is alleged to have been lost. The original was in the possession of the plaintiff, or had been, as he had expressly referred to it in a letter to which it was a reply. It was not produced; the plaintiff not denying its receipt, but claiming a lack of recollection. The loss of the letter was not the fault of the defendant, and, he having stated all that he could recollect of its contents, I think it was competent for his counsel to suggest a subject and ask him whether that was referred to in the letter. While it was within the power of the court to prevent counsel asking a question which stated the contents of the letter, he was entitled to ask the witness if it referred to a specific subject, viz., to an agreement that had been made in respect to the plaintiff's commission. The counsel, however, was not allowed to frame his question, and, as a question might have been competent, it was error to refuse to allow him to ask it. Evidence of the contents of this letter was important, in connection with the alleged conversation with the plaintiff as to the amount of his commission and the time at which it should be payable.

The defendant further proved that the contract with the purchaser produced by the plaintiff had not been completed; that he had been ready and willing to give title at all times, but the purchasers had not accepted the deed and paid the purchase price. The court submitted three questions to the jury: First, whether by the terms of the contract the commission was 5 per cent.; second, whether it was 2½ per cent.; and, third, whether the payment was due only upon the passing of the title. In relation to this last question the court said:

"I am bound to say that upon the question that nothing was to be due until the matter was finally closed I should be surprised to have you bring in a verdict upon that point, in view of the letters in evidence as to the $312.50 which was admitted to be due, and I do not feel warranted in entirely withdrawing that from you; but I do feel that the real issue before you is to determine whether it was 2½ per cent. or 5 per cent."

And to that statement the defendant excepted, whereupon the court said:

"I could not really leave that, under the proofs, to them. I will give you an exception."

I am inclined to think that this must be viewed as taking from the jury the question as to whether or not it was agreed that commission was not to be payable until the contract was finally completed and the deed delivered, or that it was expressing an opinion to the jury on a question of fact which they would consider as a substantial direction to find a verdict for the plaintiff upon that question. The defendant was entitled to have that question submitted to the jury. The defendant testified that the condition upon which he agreed to accept $45,000 for the property (a much less price than he had de-

manded before) was that the broker would accept 2½ per cent. commission, not payable until title was taken and settlement made. If the broker accepted that condition, and the defendant accepted the lower price for the property based upon such an understanding, the broker was bound by it, and he was only entitled to 2½ per cent. commission, payable when title was taken and settlement of the contract made. This was all part of one conversation. If there was any evidence to sustain the defendant's contention that the commission was to be 2½ per cent., there was evidence to sustain his contention as to the time when the commission was payable. In considering whether or not this agreement was as testified to by the defendant, and which was substantially one agreement, the jury were bound to consider all the testimony. There was evidence that after the contract was made the plaintiff had received a payment on account of his commission and signed a receipt by which he agreed to return the money paid him if the sale did not go through. It is true that the defendant had subsequently written to the plaintiff, offering to pay him the balance of his commission at 2½ per cent., although according to the contract testified to by the defendant that commission was not due; but he had explained the writing of that letter, and his testimony as to the contract, with the receipt of the plaintiff and the defendant's letter, was to be submitted to the jury in determining whether this contract as to the amount of commission and the time it was payable was made or not.

The question as to whether the letter of August 6, 1902, was a continuing agreement to pay to the plaintiff a commission of 5 per cent. when he sold the property is not free from doubt. In this letter of August 6, 1902, the defendant said that he was entirely willing to pay a commission of 5 per cent. if the plaintiff could sell the two farms at a price he would be willing to accept. He spoke of one of these farms as having cost $100,000. The defendant heard nothing more from the plaintiff for over 18 months. No offer was made; no acceptance of this agreement by the defendant; nothing was done until February 17, 1904, when the plaintiff wrote the defendant a letter, which stated that the plaintiff had made an effort to sell the defendant's property without success, but that he had recently met a gentleman who was looking for such a place and who seemed to mean business. He then asked the defendant whether he was willing to offer the property upon the same terms. This statement as to the defendant's willingness to offer the property on the same terms, it seems to me, included the commission that the defendant was willing to pay to the broker selling it. The question was not whether the broker should offer the property, or whether the defendant would sell the property, but upon what terms the defendant was willing to offer the property. In reply the defendant stated that he did not recall what the terms and price were "which you [plaintiff] received from me at the time you speak of," and then stated the terms upon which he would sell the farms, fixing the price at $50,000. There was here nothing about any agreement as to the plaintiff's commission, but a distinct statement that the defendant did not recollect the contents of his letter, and an implied statement that the plaintiff must act

under the terms and conditions in the present letter. I am inclined to think that this was a notice to the plaintiff that the terms and conditions under which the plaintiff was to offer the property, contained in the letter of 1902, were withdrawn, and the plaintiff was from thenceforth to act under the authority conferred by the letter of 1904. This latter letter authorized the plaintiff to act as broker and sell the property; but, as there was in it no agreement as to compensation, he would be entitled to recover only on the quantum meruit, and not upon an express contract as to the amount. The offer contained in the letter of August, 1902, had not been acted upon by either party. The plaintiff wrote to the defendant to know if it was still in force, and the defendant in effect withdrew or superseded it by stating that he had forgotten what it was, and there stating the terms upon which he would sell his property. Assuming that the authority contained in the letter of August, 1902, would continue until superseded or revoked, it seems to me that both parties treated it as being no longer in force, in consequence of it not having been acted on, and as superseded by the new letter of instructions of February, 1904.

Counsel for the defendant asked the court to charge that the letter of February 17, 1904, was supplemental, and took the place of any prior agreement, and is the only letter that can be relied on in that connection as showing any term of any agreement previous to the verbal arrangement at the closing of the contract. This was refused, and the counsel for the defendant excepted. I think that counsel was entitled, under the evidence, to that charge, and that it was error to refuse it, especially in view of the fact that the court had expressly charged:

"You have in evidence the first letter, in which the defendant offered a commission of 5 per cent., and that contract was in writing; and it bound him, unless there was a subsequent new contract made in the place of that."

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and PATTERSON, J., concur. HOUGHTON, J., concurs in result.